[Crim. No. 6111. Third Dist. Nov. 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD RAY ROWLAND, Defendant and Appellant.

## COUNSEL

Hugh O. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Arnold O. Overoye and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.***—Defendant appeals from a judgment of a Sacramento County Superior Court conviction, after jury trial, of violation of Penal Code section 496 (receiving stolen property) and Penal Code section 484e, subdivision (1) (acquiring credit cards with intent to use, sell or transfer).

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Questions Presented

1. Defendant was not denied effective aid of counsel.

2. (Not raised by defendant.) Defendant was properly sentenced for two crimes.

## Record

Defendant was charged by information of violation of Penal Code section 496 (receiving stolen property) and section 484e, subdivision (1) (acquiring credit cards).[1]

At the jury trial he was convicted of both charges. Probation was denied, and he was sentenced to serve six months in the county jail on each count, sentences to run consecutively.

## 1. Aid of Counsel.

 Defendant does not attack the sufficiency of the evidence, but, as is now the prevailing custom on appeal, ignores the effectiveness of the evidence against him and blames his conviction on trial counsel. The evidence need not be detailed. Taking the evidence supporting the conviction, as we are required to do, it is as follows: Officer Espinosa of the Sacramento Police Department, while seated in his marked police car parked on a certain street in Sacramento, at about 8:30 p.m., observed defendant park his pickup truck. After remaining in the truck for a period, defendant got out and attempted to gain entry to several parked cars by forcibly jerking the handles of the respective car doors, crouching down each time to look inside the automobiles. The officer followed defendant and ordered defendant to stop and to walk back toward him and his partner. As defendant complied the officer saw a wallet fall from defendant's right side. Opening the wallet Espinosa found therein credit cards and personal identification papers, including a social security card and medical cards in the name of Frank M. Canizales, Jr. Defendant had on his person a wallet containing his own identification papers. Defendant was arrested for tampering with vehicles.

Investigation disclosed that the automobile of Canizales, containing his wallet and contents, had been stolen approximately two weeks earlier.

Defendant's defense was that at 1:30 a.m., on the day of his arrest, he had found the wallet on the floor of the Metropolitan Bar restroom. He did not intend to keep the wallet but intended to drop it in a mailbox. (Apparently he was in no hurry to do so, as he still had the wallet some

---

[1] Defendant admitted two prior convictions of second degree burglary.

19 hours later.) He said he dropped the wallet when the officers approached him because he was afraid they would think he had stolen it and would arrest him. He did not attempt to account for trying to enter the parked cars. It was from a parked car that the wallet had been taken.

At the trial defendant asked for a mistrial on the ground that his counsel did not call five witnesses whom he considered material, and his charge of having inadequate counsel is based solely on that issue. Defendant had testified that he was drunk when he picked up the wallet although he also stated that he knew what he was then doing.

These witnesses, according to defendant, could corroborate his testimony as to his state of sobriety, his entering the bathroom and leaving immediately, and his activities thereafter. He does not claim that he informed any of his friends he had found the wallet nor shown it to any of them. An examination of the record shows that his trial counsel did the best he could for a lost cause and was not ineffective in his handling of the case.

His failure to call the five witnesses was undoubtedly a matter of trial tactics. The fact, if it were a fact, that defendant could prove that he was intoxicated 19 hours before his arrest and that he had visited the restroom would hardly account for his keeping the wallet so long. Moreover, the fact of his failure to disclose to his friends the finding of the wallet would do him more harm than any possible good that could come from their corroborating his alleged condition as to sobriety and his having been in the restroom. Defendant's inability to understand why his counsel did not call the five witnesses under the circumstances here cannot be a basis for inferring that his counsel was wrong. (See *People* v. *Horner* (1970) 9 Cal.App.3d 23 [87 Cal.Rptr. 917].)

Defendant's counsel cross-examined the prosecution's witnesses, produced defendant to testify in his own behalf, and attempted to establish through the arresting officer's partner that defendant was wandering around at 8:30 p.m. to dry his damp pants. (Defendant claimed that he had spilled beer on his pants and that the car doors defendant attempted to open were not locked.)

There is nothing in the record to show that trial counsel's actions approached in any way the test of inadequacy set forth in *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].

### 2. *The Sentence.*

▆ Defendant was sentenced to six months in the county jail on each count to run consecutively, count I, receipt of stolen property; count II, petty theft through acquiring a credit card without the owner's consent

with intent to use or sell it. Under Penal Code section 654, when a single act is the basis of multiple convictions, a defendant can be punished for only one. Whether a course of conduct is considered a single act or gives rise to more than one offense depends upon the intent and objective of the actor. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].)

The problem is not without difficulty, but analysis of the two offenses shows that the "intent or objective" underlying the criminal conduct is separate and distinct. Thus, while the single act of receiving stolen property gave defendant possession of the stolen credit cards, defendant, by keeping them, added another criminal act, namely, keeping possession of credit cards which he had no right to have for the purpose of using or selling them. That apparently was his "intent and objective." As to the wallet and the other contents thereof, defendant's only offense was keeping them knowing them to be stolen. As to them, he was violating the law in no other respect. However, in keeping the credit cards over an extended period of time with intent to use them, he was violating a law other than that prohibiting possession of stolen property.

The situation here is similar to that in *People* v. *Taylor* (1969) 2 Cal. App.3d 979 [83 Cal.Rptr. 119]. There the court ruled proper cumulative sentences for possession (or receiving) stolen property (a gun) and possession by an ex-convict of a concealable gun (the same gun). The court pointed out (at pp. 985-986): ". . . The public insult done by Taylor, an ex-convict, in possessing the loaded revolver was compounded by the fact that the weapon was stolen, and known by him to be stolen. As to each offense Taylor had a separate and distinguishable *mens rea*. It does not seem reasonable that the state should be required to indulge in the fiction that but one crime had been committed." In the instant case defendant had a separate and distinguishable *mens rea*—to receive stolen property, and to keep credit cards for use in violation of a different law than that of receiving stolen property.

In *In re Hayes* (1969) 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430], defendant was held to have been properly sentenced for two separate offenses, namely, driving with a suspended license and at the same time driving while intoxicated. The court reviewed the many cases on this subject of double punishment and stated that most of the cases construed Penal Code section 654 as prohibiting double punishment by application of one or the other of two theories. One, where the multiple violations are necessarily included offenses, and two, where there is a single " 'intent and objective' underlying a course of criminal conduct." (*Id.* at pp. 605-606.) Obviously, in our case neither one of the offenses is necessarily included

in the other nor does the second theory apply because of defendant's intent and objective to acquire "a credit card . . . with intent to use it or to sell or transfer it. . . ." (Pen. Code, § 484e, subd. (1).) In *Hayes* the court said (at p. 606) that the defendant "drove his car with an invalid license and while intoxicated," and that to apply section 654 on the theory that the " 'driving' " was the defendant's only " 'act or omission' " "would be no more justified than to extract the act of 'possession' from a charge of possessing two different items of contraband, an approach long rejected by our courts." (Citing cases upholding multiple punishment for simultaneous possession of various narcotic drugs and possession of illegal weapons.) The court further said (p. 607): ". . . We cannot overlook the crucial element: section 654 refers not to *any* physical act or omission which might perchance be common to all of a defendant's violations, but to a defendant's *criminal* acts or omissions. [Citations.] Indeed, section 654 itself makes this distinction evident, since it refers to an act or omission 'made punishable' by different statutes. . . .

"The proper approach, therefore, is to isolate the various *criminal* acts involved, and then to examine only those acts for identity."

In the instant case, as before stated, the two criminal acts are: (1) Receiving stolen property; and (2) acquiring credit cards to be used illegally. The two offenses, as said in *Hayes, supra,* 70 Cal.2d at page 607, "are in no sense identical or equivalent."

In the instant case there were two separate sets of items in the possession of defendant: one, the wallet and the personal identification cards therein, and two, the credit cards. As to the first items, the mere possession of the stolen property was all that was required to be shown to constitute the offense. It was not necessary to show that defendant intended to make any use of these items. As to the credit cards, however, an additional factor had to be shown or there was no offense additional to that of mere possession of stolen property, namely, that defendant intended to "use it or to sell or transfer it to a person other than the issuer or the cardholder. . . ." (Pen. Code, § 484e, subd. (1).)

In *People* v. *Harrison* (1969) 1 Cal.App.3d 115 [81 Cal.Rptr. 396], the defendant was held to have been properly sentenced separately for two offenses, one, an ex-convict having custody of a revolver, and two, the carrying of a loaded revolver in a motor vehicle. The court pointed out that the two statutes involved struck at different things, the hazard of permitting ex-felons to have concealable weapons and the hazard arising when a person carried a loaded firearm in public. In the instant case there are two separate hazards, one, the possession of stolen property, and the other, acquiring a credit card for illegal use.

*People* v. *Wren* (1969) 271 Cal.App.2d 788 [76 Cal.Rptr. 673], upheld separate sentences for drunken driving with bodily injury and possession of an open bottle of liquor in a car, offenses which arose from the defendant driving a motor vehicle on a public road.

Judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.