[No. F003676. Fifth Dist. June 12, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
HAI MINH LE, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Appellant was convicted by a jury of five counts of robbery (Pen. Code, § 211), two counts of attempted murder (Pen. Code, §§ 664, 187), two counts of robbery within an inhabited dwelling (Pen. Code, § 213.5), and one count of first degree burglary (Pen. Code, §§ 459, 460). He was also found to have used a firearm (Pen. Code, § 12022.5) in the commission of each of the counts and of having caused great bodily injury (Pen. Code, § 12022.7) in the commission of one of the attempted murder counts and one of the robbery counts.

The single contention raised on appeal is that appellant's automobile was illegally searched, as a result of which several pieces of property that had been stolen during one of the robberies and the gun used to shoot one of the victims were found. The statement of facts will be limited to those necessary to the disposition of this issue.

### FACTS

On June 22, 1983, police investigating a series of robberies and one shooting developed probable cause to arrest appellant for those crimes. Appellant was spotted by the police while he was driving his car accompanied by his wife, his sister and his two children. The car was stopped and appellant was arrested. Probable cause to stop the automobile and arrest appellant is not being challenged. Shortly after appellant was arrested Officer Mart, who was present during the arrest but did not actually participate in it, was assigned the job of moving appellant's car out of a traffic lane onto a frontage road. The occupants of the car were taken to the police station and the car was towed to police headquarters.

The car was not searched until appellant's wife signed a form consenting to the search of the car and the apartment she shared with appellant. The search of the car was conducted by Officer Mart.

The trial court ruled that the consent to search the apartment was invalid due to the extended detention of appellant's wife prior to the police's obtaining her written consent for the search and suppressed the evidence found in the apartment. The consent as to the search of the car was likewise held to be invalid. However, the court upheld the search of the car based on *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] and *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].

## DISCUSSION

Our Supreme Court has held that the "right to truth in evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (d)) abrogates California's independent exclusionary rule and that the exclusion of evidence is not mandated unless the seizure thereof was in violation of the federal exclusionary rule under the Fourth Amendment to the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)

As mentioned, the trial court expressly upheld the search of the car on the authority of *United States* v. *Belton, supra,* 453 U.S. 454 and *United States* v. *Ross, supra,* 456 U.S. 798.  *Belton* held that if an occupant of a car is subject to lawful arrest the officer may make a lawful contemporaneous search of the passenger compartment of the car incident to the arrest.

In *Ross,* the United States Supreme Court held that officers who legitimately stop a vehicle and have probable cause to believe contraband is within it may conduct as thorough a search of the entire vehicle as any magistrate could authorize in a search warrant. (*United States* v. *Ross, supra,* 456 U.S. at p. 800 [72 L.Ed.2d at p. 578].) Moreover, if an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is also permissible if the vehicle has been impounded. (*Id.,* at p. 807, fn. 9, p. 809 [72 L.Ed.2d at pp. 582-584].) Further, in *Michigan* v. *Thomas* (1982) 458 U.S. 259 [73 L.Ed.2d 750, 102 S.Ct. 3079], the high court upheld a warrantless search of a vehicle after the defendant had been arrested and the vehicle impounded. In *Florida* v. *Meyers* (1984) 466 U.S. 380 [80 L.Ed.2d 381, 104 S.Ct. 1852], the court upheld the warrantless search of a vehicle which had been impounded for approximately eight hours.

*Belton* and *Ross* and their progeny furnish adequate justification for the search of the vehicle in this case. The validity of the stop and arrest of appellant, who was driving, is not challenged. Moreover, the searching officer, Officer Mart, was "aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search" (loot from the robberies and weapons) could be found in the car. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 571 [128 Cal.Rptr. 641, 547 P.2d 417].) Probable cause to search the car is founded upon the fact that Officer Mart was present when appellant was arrested for the robberies and other offenses. He knew appellant was driving the vehicle. Some of the property which appellant stole during the series of robberies was expensive jewelry which could be hidden

in a car. In addition, a few hours before appellant's arrest he had attempted to get a jeweler to appraise some of the stolen jewelry. The jeweler recognized one of the pieces of jewelry as being stolen property, and when appellant left the store the jeweler wrote down appellant's license plate number as well as a description of the car. The jeweler then called the police and reported the information. Officer Mart was aware of the information from the jeweler prior to appellant's arrest. Furthermore, Officer Mart had previously seen appellant at one of the robbery locations during a stakeout and followed appellant as he drove away from the location in the same car in which he was arrested.

However, relying upon *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205] and *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537 [102 Cal.Rptr. 729, 498 P.2d 977], appellant argues that when Officer Mart conducted the search of the car he was subjectively relying upon appellant's wife's consent as a basis for the search, having waited until the consent was obtained and having searched the car immediately after the consent was obtained. Therefore, appellant argues, because Officer Mart relied upon consent as the basis for the search, the search cannot be upheld on the basis of *Belton* and *Ross*.

In *Simon,* the defendant was arrested for Vehicle Code violations and subsequently searched. The search produced a small amount of marijuana, and defendant was prosecuted for possession of marijuana. At the preliminary hearing the arresting officer testified that he arrested the defendant for equipment violations (the lights on his car did not work) and took him into custody because the defendant did not have any identification on him. (*People* v. *Superior Court* (*Simon*), *supra,* 7 Cal.3d at p. 198.) The trial court held that the search could not be justified incident to an arrest for a minor traffic infraction and therefore suppressed the evidence.

On appeal, the Attorney General argued that the police officer had probable cause to arrest defendant for car theft and therefore the search could be based on defendant's arrest for a felony. (*Id.,* at pp. 192-193.) The Supreme Court held that objectively the facts did not support a finding of probable cause to arrest defendant for car theft and, in addition, there had been no showing that the police officer believed defendant was guilty of car theft. (*Id.,* at p. 198.) The court then went on to say:

"Indeed, there is no showing that the officer in fact believed defendant was guilty of automobile theft: he did not inform defendant that such was the ground for the arrest, and at the preliminary examination he testified only that he arrested defendant for the equipment violations and took him into custody because of his lack of identification. The purpose of the exclu-

sionary rule—to deter unreasonable searches and seizures by law enforcement officers—would clearly be frustrated if the courts were required to uphold a search conducted on unreasonable grounds simply because the prosecuting authorities belatedly managed to devise an alternative theory on which the arresting officer *could* have acted reasonably if he had known of it. Compliance with the fundamental guarantees of the Fourth Amendment is not a game to be won by inventive counsel, but a practical, day-to-day responsibility of law enforcement personnel. Accordingly, just as a warrantless arrest or search cannot be justified by facts of which the officer was wholly unaware at the time [citations], so also it cannot be justified on theories thereafter invented for the consumption of reviewing courts [citations]." (*People* v. *Superior Court* (*Simon*), *supra,* 7 Cal.3d at p. 198; fn. omitted.)

In *Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, the defendant was arrested for prowling, and his car was impounded and searched. The search of the vehicle's trunk produced evidence which tied defendant to recent residential burglaries. In the trial court the district attorney attempted to justify the search as an inventory search. However, based on *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], the Supreme Court held that the inventory search was too extensive and therefore invalid. (*Mestas* v. *Superior Court, supra,* 7 Cal.3d at p. 540.)

In the hope of saving the case, the Attorney General offered two new alternative theories on appeal that had not been presented below. One of the theories had first been advanced by the Court of Appeal before the case got to the Supreme Court. After quoting from *Simon* (see above), the *Mestas* court said: "Although *Simon* speaks of justification for search invented by the prosecuting authorities, *Simon's* argument applies equally to the initiation of such new justifications for search by the reviewing court itself. The court, at the appellate level, cannot invoke a new theory based upon the premise that the arresting officer in making the search *could* have acted reasonably upon a particular ground when the prosecution has failed to make a factual showing at the original hearing that the arresting officer did act upon that ground. [Citations.]" (*Id.,* at pp. 542-543.)

Upon analysis, it appears that the instant case is distinguishable from *Simon* and *Mestas* in that in this case the facts giving rise to a valid search under *Belton* and/or *Ross* were subjectively present and were presented to the trial court, although the officer ostensibly relied upon the invalid consent of appellant's wife.

*Mestas* itself makes a distinction with respect to a case where the searching officer is subjectively aware of the facts which constitute valid grounds

for the search, though he may state other reasons for the search. Thus, in *Mestas* v. *Superior Court, supra,* 7 Cal.3d at page 542, footnote 4, the court stated:

"The Attorney General cites *People* v. *Shaw* (1971) 21 Cal.App.3d 710 [98 Cal.Rptr. 724], in which the court, discussing an inventory search, said that 'Although the search cannot be upheld for the reason given by the officer, if in fact reasonable cause for the search existed, the statement of the officer that he based his authority to search on a ground subsequently disapproved by the Supreme Court does not vitiate the validity of the search if other valid ground for the search existed.' (21 Cal.App.3d at p. 713.) In the light of our subsequent opinions in *People* v. *Superior Court* [*Simon*] (1972) [7 Cal.3d 186] [101 Cal.Rptr. 837, 496 P.2d 1205] and *People* v. *Miller* (1972) [7 Cal.3d 219] [101 Cal.Rptr. 860, 496 P.2d 1228], the quoted language from *People* v. *Shaw* must be limited to cases in which the 'other valid ground for search' is subjectively present at the time of search and properly presented to the trial court." (*Mestas* v. *Superior Court, supra,* 7 Cal.3d at p. 542, fn. 4.)

In *People* v. *Shaw* (1971) 21 Cal.App.3d 710 [98 Cal.Rptr. 724], the case cited by *Mestas* in the above quotation, the stated ground for the search was that the officer was conducting an inventory search of the vehicle. The inventory search was held to be invalid. The officer also was aware of facts which would have justified an immediate arrest and search of the vehicle, though the ground stated for the search was that it was an inventory search.

A distinct and separate ground for validating the search in this case is found in federal cases which apparently do not follow the California rule of *Mestas* and *Simon* and their progeny. Under the federal authorities, it is not essential that the arresting officer at the time of the arrest or search have a subjective belief that the arrestee is guilty of a particular crime or that the search is being conducted on the basis of a particular legal theory so long as the objective facts, when fully determined, afford probable cause. It is not the officer's subjective intent or motive that governs.

Thus, in *Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717], the high court states:

"We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. In *United States* v. *Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), a suspect was searched incident to a lawful arrest. He challenged the search

on the ground that the motivation for the search did not coincide with the legal justification for the search-incident-to-arrest exception. We rejected this argument: 'Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed.' *Id.*, at 236, 94 S.Ct., at 477. The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (Fn. omitted.)

In *Klingler* v. *United States* (8th Cir. 1969) 409 F.2d 299, which involved a statute similar to Penal Code section 836, the officer arrested Klingler for vagrancy and made a contemporaneous search that revealed a pistol which formed the basis for a federal firearms act charge against him. The court concluded that there was not probable cause to believe him guilty of vagrancy. The court upheld the arrest, however, on the ground that there was probable cause to arrest him for robbery. Nowhere in the opinion is it stated that the officer held a subjective belief that Klingler was guilty of robbery, and the contrary is indicated by the officer's testimony that he did not think he had "enough facts" upon which to arrest Klingler for the robbery. With respect to that testimony, the court stated:

"Because probable cause for an arrest is determined by objective facts, it is immaterial that Kisecker, at the hearing on the motion to suppress, testified that he did not think that he had 'enough facts' upon which to arrest Klingler for armed robbery. His subjective opinion is not material. See, *Terry* v. *State of Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A constitutional safeguard predicated on an objective standard requires an even-handed application. From the standpoint of the individual, the figurative zone protecting his privacy and personal integrity may be encroached under the law only by facts and circumstances totaling probable cause for arrest. See, *Beck* v. *State of Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Johnson* v. *United States*, 333 U.S. 10, 14, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948). From the standpoint of the government, application of the principle of probable cause must allow room for some mistakes by the arresting officer." (*Id.*, at p. 304.)

In *State of South Dakota* ex rel. *Thunderhorse* v. *Erickson* (D.S.D. 1971) 328 F.Supp. 1149, the defendant was arrested for vagrancy, but sufficient probable cause did not exist. The officer testified he did not believe he had sufficient grounds to arrest the defendant for robbery. In upholding the search, the court stated:

"Probable cause for the arrest of petitioner and the other two men on the felony charge of robbery in the first degree was clearly present. No bad faith on the part of the arresting officer in stating the grounds of arrest as vagrancy is shown by the record. The arrest and the search incident thereto were not invalid because the grounds for the arrest were improperly stated. [Citations.]" (*Id.*, at p. 1151.)

When this same case was appealed, the Eighth Circuit Court of Appeals had this to say about the search: "In summary, the record shows that, at the time of petitioner's arrest, Officer McKelvey of the Sioux Falls, South Dakota Police Department possessed sufficient information to make an arrest for robbery but stated the ground for the arrest as vagrancy. After petitioner and his two companions were removed from the scene, McKelvey's fellow police officers conducted a warrantless search of the automobile in which the trio had been riding. This search uncovered a wallet bearing the robbery victim's name.

"Petitioner argues that, since vagrancy arrest was improper, the subsequent search of the automobile was invalid. We disagree. The validity of the search in this case does not turn upon whether the arresting officer stated the proper grounds for the arrest; instead, it turns upon whether the police had probable cause to believe that the automobile contained the fruits of the robbery. See *Chambers* v. *Maroney*, 399 U.S. 42, 47 n. 6, 49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll* v. *United States*, 267 U.S. 132, 158-159, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *cf. Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). We examine, therefore, the facts known to the police." (*Thunder Horse* v. *State of South Dakota* (8th Cir. 1972) 456 F.2d 1262, 1263.)

After examining the facts known to the police, the court said: "We think that these facts furnished the police with probable cause to believe that petitioner and his companions committed the robbery and that the automobile contained the fruits of the robbery. Given probable cause, the search of the automobile was reasonable under the Fourth Amendment standard announced in *Chambers* v. *Maroney, supra.*" (*Ibid.*; fn. omitted.)

Clearly, the search of the vehicle pursuant to the above quoted authorities under the United States Constitution's Fourth Amendment was authorized in this case. (*In re Lance W., supra,* 37 Cal.3d 873.) We are bound by the above federal rule.

Our conclusion that the search was valid under *Ross* and *Belton* precludes the validity of appellant's assertion that trial counsel was incom-

petent for acquiescing in the trial court's ruling that the search could be upheld under the *Ross* rationale.

The judgment is affirmed.

Franson, J., and Ivey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.